Estate of Albert D. Phillips, Deceased, Viola T. Phillips, Administratrix v. Commissioner.
Estate of Phillips v. Commissioner
Docket No. 49561.
United States Tax Court
T.C. Memo 1955-139; 1955 Tax Ct. Memo LEXIS 196; 14 T.C.M. (CCH) 516; T.C.M. (RIA) 55139; May 31, 1955
*196 Robert W. Patton, Esq., for the petitioner. George W. Calvert, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent has determined deficiencies in income taxes and penalties as follows: Amount of Deficiencies
5%
Year
Income Tax
Penalty
1946
$ 7,624.90
1947
10,570.73
$528.54
January 1-November 17,
1948
16,811.57
840.58 The remaining issues are whether respondent correctly applied the net worth method in computing decedent's income for the calendar year 1947 and the short taxable period in 1948, and whether he correctly imposed the negligence penalty under section 293(a), Internal Revenue Code of 1939. Findings of Fact Some of the facts have been stipulated and are hereby found. Decedent Albert D. Phillips died a resident of Bartow, Florida, on November 17, 1948. During the years involved in this proceeding he was engaged in growing citrus fruit, operating a poolroom, and carrying on an illegal gambling operation in Florida. Viola T. Phillips was appointed administratrix of his estate and, although she has since remarried and is now Viola T. Chartrand, she continues as the qualified *197 and acting administratrix by appointment of the County Judge's Court of Polk County, Florida. Federal income tax returns of decedent for the years 1946 and 1947 and the period January 1-November 17, 1948 were prepared by, or under the supervision of a certified public accountant, and were filed with the collector of internal revenue for the district of Florida. The income tax payments for each of the years 1946 through 1948 were made by checks drawn on the Albert D. Phillips grove account. Decedent's 1946 and 1947 income tax returns were prepared by the accountant from double entry records submitted with respect to the grove operation and from summary information made available by decedent as to the poolroom and chance game operations. Decedent's 1948 income tax return was prepared by the accountant from summary information made available by decedent's bookkeeper with respect to income from the poolroom operation, from information furnished by Viola as to the gambling operation, and from the double entry records submitted with respect to the grove operation. The same method of accounting was used in determining decedent's income for each of the years 1942 through 1945 and in the *198 preparation of his income tax returns for such years. The returns for 1942 through 1945 were the subject of a prior examination by the Bureau of Internal Revenue, and, although this resulted in certain adjustments with respect to the income from the grove operation, no question was raised as to the method of accounting used by decedent with respect to his income from the poolroom and gambling operations. The gambling operation was carried on by means of salesmen who secured bets and recorded them on pads. These pads were turned in by the salesmen and, after being kept about a week by decedent, were destroyed. Decedent's record of this gambling operation, prepared in most instances by Viola, consisted of a pad with columns representing Sales (gross bets), Commissions (commissions to the salesmen), Net (the difference between Sales and Commissions columns), and Hits (amounts paid out to winners). The records produced at the hearing did not cover the entire year of 1947 nor the entire period from January 1-November 17, 1948. In many cases no figure whatsoever has been entered in the Hits column; in other instances "OK" has been entered. The summary reports of this gambling operation *199 purported to show the gross amount of money taken in from the sale of chances in each week, and the amount of money paid out on winning numbers. The summary reports were made from weekly records. The income from gambling was in the form of cash and the payments were in cash. No bank account was maintained for the gambling business and decedent kept no written record showing how much cash he had on hand at any time. Income from decedent's gambling operations was retained in cash in a safe at his home and at times the cash on hand ranged from $70,000 to $80,000. Sometimes when too much money had been bet on the same number, decedent would call another gambler and ask him to take over part of the bet. No record was kept of these transactions, although money received by decedent was entered on the weekly reports. Florida law requires a taxpayer to make and file an intangibles tax return if he owns property of the required type. There is no exemption allowed and the penalty for failure to file such return is an additional 10 per cent of any tax found to be due. Cash on hand, checking accounts, savings accounts, stock and other items of intangible personal property are taxable under *200 the law and are to be returned for tax purposes. Decedent did not file an intangibles tax return for any of the years involved herein. Decedent's assets, liabilities and net worth on December 31, 1945, December 31, 1946, December 31, 1947, and November 17, 1948, were as follows: 12-31-45
12-31-46
12-31-47
11-17-48
ASSETS
Cash in safe
$ 4,500.00
Cash on deposit in bank
$ 3,934.91
$ (896.62)
$ 1,558.59
135.58
Accounts receivable
5,354.56
3,684.83
5,023.41
Stock investments
2,500.00
2,500.00
5,132.78
5,132.78
Real estate
15,507.75
18,007.75
18,007.75
34,007.75
Citrus trees
37,437.00
37,437.00
39,173.30
39,497.10
Buildings
20,106.89
28,298.97
28,298.97
59,159.38
Machinery and equipment
32,554.27
38,225.45
40,305.03
41,130.03
Irrigating system
7,329.74
22,307.14
22,307.14
22,307.14
Office furniture and fixtures
385.94
385.94
385.94
385.94
Other investments
3,705.31
10,705.31
10,705.31
Total assets
$119,756.50
$155,325.50
$169,559.64
$221,984.42
LIABILITIES & NET WORTH
Accounts payable
$ 4,650.76
$ 13,056.75
$ 11,809.88
$ 13,389.45
Notes and mortgages payable
5,000.00
5,000.00
5,000.00
12,916.66
Reserve for depreciation
19,555.56
29,217.25
43,281.62
54,375.31
Total liabilities
$ 29,206.32
$ 47,274.00
$ 60,091.50
$ 80,681.42
Net worth
90,550.18
108,051.50
109,468.14
141,303.00
Total - Liabilities & net worth
$119,756.50
$155,325.50
$169,559.64
$221,984.42
*201 In each of the years involved his net worth increased as follows: Jan. 1-Nov. 17,
1946
1947
1948
Net worth - end of year
$108,051.50
$109,468.14
$141,303.00
Net worth - beginning of year
90,550.18
108,051.50
109,468.14
Increase in net worth during year
$ 17,501.32
$ 1,416.64
$ 31,834.86
During these years decedent was married and had two sons who were away at school. He supported his mother and furnished over 50 per cent of the money used for support of the two boys, including their school tuition. He owned a home in Bartow, Florida, and a cottage on a lake. He gave Viola $75 per week to operate the home and buy food, though this was not the entire amount spent for that purpose. The cottage, equipped with running water and electricity, had a living room, dining room and kitchen downstairs and four bedrooms upstairs. Decedent liked to hunt and fish, and he owned equipment including a boat and motors. Decedent spent $10,000 for living expenses and miscellaneous nondeductible expenditures both in the calendar year 1947 and in the period January 1-November 17, 1948. In 1946, payments of $21,349.38 were made on Federal income taxes and $681.81 *202 was received as a refund of 1945 income taxes. In 1947, payments of $29,108.32 were made on Federal income taxes. In 1948, payments of $5,108.46 were made on Federal income taxes, and $4,438.71 was received as a refund of 1947 income taxes. On March 29, 1949, a refund of decedent's 1948 income taxes was made in the amount of $5,108.46. On August 23, 1949, $6,608.75 was refunded on decedent's income taxes for 1946. Decedent made charitable contributions of $235 and $30, respectively, in 1947 and 1948. Excess depreciation on groves in the amounts of $814.85, $814.85 and $746.95, respectively, was claimed in 1946, 1947 and the period January 1-November 17, 1948. He spent $627 for ordinary repairs to buildings in 1946 and spent $1,021.73 on capital expenditures in 1947. He was entitled to depreciation on the capital expenditures in the amounts of $25.54 and $46.83, respectively, in 1947 and the period January 1-November 17, 1948. The totals of the entries made for 1947 in decedent's weekly record on gambling are as follows: *
Sales
Commissions
Net
Hits
$124,734.65
$12,717.50
$110,756.50
$88,317.40
*203 On his 1947 Federal income tax return, decedent reported income from chance game activity in the amount of $117,715.20 and chance game premium payments in the amount of $96,483.10. In the schedule submitted to the accountant and used in preparing decedent's 1948 income tax return the following appears: In
Out
1- 3-48
47
$2,388.45
$2,465.70
1-10-48
100
2,757.75
8,442.00
1-17-48
70
2,832.40
1,846.40
1-24-48
33
3,084.70
4,834.05
1-31-48
52
3,623.45
2,598.15
2- 7-48
30
3,939.70
2,770.05 The "In" column represents the gross amount of chance play sold during the week; the "Out" column represents the money paid out on winning numbers. The totals of the entries for the same weeks in decedent's 1948 weekly record on gambling are as follows: Com-
Date
Sales
missions
Net
Hits
1- 3-48
$2,887.95
$288.80
$2,599.15
$1,550.70
1-10-48
3,102.45
310.30
2,802.15
8,264.50
1-17-48
3,297.95
329.90
2,967.10
1,428.90
1-24-48
3,120.05
322.00
3,266.65
5,011.60
1-31-48
4,103.70
410.55
3,700.23
1,578.15
2- 7-48
4,572.25
457.20
4,115.05
1,534.65
Decedent's Federal income tax returns for 1946, 1947 *204 and the period January 1-November 17, 1948, disclosed income as follows: 1946
Net profit - grove operations
$20,604.95
Net profit from billiard hall and
chance game operations
33,848.20
$54,453.15
Less: Standard deduction
500.00
Net income
$53,953.15
1947
Dividends
$ 100.00
Net loss - grove operations
(8,170.41)
Net profit from billard hall and
chance game operations
30,102.26
$22,031.85
Gain from sale or exchange of cap-
ital assets
300.00
Adjusted gross income
$22,331.85
Less: Standard deduction
500.00
Net income
$21,831.85
January 1-November 17, 1948
Gain from sale of property other
than capital assets
$ 889.60
Net loss from grove, billiard hall
and chance game operations
(10,540.90)
Net loss
($ 9,651.30) In the statutory notice respondent determined decedent's income for the taxable years 1946 and 1947 and the taxable period January 1-November 17, 1948, as follows: 1946
Net income per return
$53,953.15
Unallowable deductions and addi-
tional income
(a) Business income
1,426.17
Net income adjusted
$55,379.32
1947
Net income per return
$21,831.85
Unallowable deductions and addi-
tional income
(a) Business income
18,128.11
Net income adjusted
$39,959.96
January 1-November 17, 1948
Net loss per return
($ 9,651.30)
Unallowable deductions and addi-
tional income
(a) Business income
52,185.91
$42,534.61
Nontaxable income and additional
deductions
(b) Capital gain
$444.80
(c) Standard deduction
500.00
944.80
Net income adjusted
$41,589.81
*205 In determining decedent's taxable income for 1946, respondent made adjustments for excessive depreciation claimed on citrus trees and for certain expenditures deducted as ordinary repairs and disallowed a claimed net operating loss carry-back from the taxable period beginning January 1, 1948 and ending November 17, 1948. In determining decedent's taxable income for 1947 and for the period January 1-November 17, 1948, respondent used the increase in net worth plus personal expenditures method and made changes in each taxable period for excessive depreciation claimed on citrus trees. A further change was made in 1947 to capitalize certain expenditures that had been deducted on the return as ordinary repairs. The cash which was deposited in the grove bank account subsequent to 1945 is reflected in the deposit slips kept by decedent in connection with the grove operation. Decedent advanced the following amounts of cash to the grove account operations during the years 1946, 1947 and the period from January 1-November 17, 1948: 1946 - $25,000, all advanced during the months of January and February 1946. 1947 - $37,005, of which $19,000 was advanced during the month of January 1947. *206 1948 - $28,735, and in addition thereto $17,000 of cash funds were advanced for the purchase of property in Bartow, Florida. Decedent's records for the taxable year 1947 and the period January 1-November 17, 1948, were inaccurate and incomplete and did not properly and accurately reflect his taxable income. Opinion Petitioner has wholly failed to sustain its burden of proving that respondent was not justified in resorting to the net worth method in computing decedent's income. Decedent's participation in a concededly illegal business may readily explain the failure to produce adequate books and records from which his income could be determined. But such an excuse does not take the place of the records themselves. And in their absence respondent was justified in resorting to the best method available to reconstruct decedent's presumptive income. Carmack v. Commissioner, (C.A. 5) 183 Fed. (2d) 1, certiorari denied 340 U.S. 875. The increase in net worth is established [1] and respondent's computation of petitioner's decedent's living expenses seems to us amply supported by the evidence. * We have accordingly found the ultimate facts in accordance *207 with the determination and this, of course, disposes of the issue. When it comes to the negligence penalty, however, respondent's action does not seem to us to be warranted. It is apparently grounded in the premise that decedent's records were so inadequate, his knowledge of that fact so certain, that the resulting understatement of income must be viewed as the result of lack of due care. [2] But the testimony is uncontradicted that the same records, inadequate though they may have been, were in use for a number of previous years, that decedent's returns had been examined and that no exception was taken at the time to his procedure in *208 arriving at the figures set forth in the return. While of course respondent is not estopped to claim here that the records were inadequate, it is quite different to say that decedent was negligent in pursuing the same course that respondent had already tacitly approved. We regard the evidence produced by petitioner on this issue as prima facie sufficient to rebut the correctness of respondent's determination and place the burden of going forward upon him. This burden he has not sustained. To the extent of the negligence penalties, the deficiency is disapproved. Decision will be entered under Rule 50. Footnotes
*. These totals are computed from an exhibit, and differ from those submitted by either of the parties.↩
1. The parties are unable to agree, for the purpose of determining net worth, on the amount of cash on hand but although it appears that decedent had some cash at the beginning of each of the years in question, petitioner has not shown that he did not have an equal amount on hand at the end of each of those years. Accordingly, the cash balances, except as stipulated, have no significance. a1 This sentence was corrected in an official Order of the Tax Court dated June 2, 1955 by inserting the word "decedent's" following the word "petitioner's."↩
2. "The respondent has determined that Phillips understated his income by $18,128.11 in 1947 and by $52,185.91 in the period January 1, 1948 to his death on November 17, 1948. As has been fully pointed out in a prior section of this brief, Phillips' books were inaccurate and inadequate. Substantial understatements of income and inadequate books and records sustain the respondent's determination that the five percent negligence penalty is due. Carmack v. Commissioner, supra.↩" Resp. br. p. 27.